Yes, sir. Good morning. You may proceed. Thank you. This is a case about whether the defendant and Associated Underwriters wrongfully terminated the plaintiff based upon her age, as was established in the Hazen-Paper case and explained by this court in EEOC v. City of Independence, Missouri. The question is, did the defendant suppose a correlation between the plaintiff's age and cutting health insurance premium costs, and did the employer act on that correlation? Fortunately for us, the defendant actually put its intention in writing in an email to its health insurance carrier in 2008, before the plaintiff was discharged. The employer's president, Gregor Botkin, writes, We have lost several of the older, sicker employees and should have some consideration on this. That is followed by a meeting that is called by the vice president, Mr. Hallgren, who has a meeting with the plaintiff, Marjorie Tramp, and a co-worker, Barb Treadway, who was actually 71, I believe, at the time, and Marjorie was 70. So, Mr. Hallgren calls them both into his office and asks them if they will voluntarily get off of the health insurance plan of the company and go on to Medicare. Now, according to the testimony of Marjorie Tramp, the decision was supposed to be made the very next day, by the next day. And both Marjorie Tramp and Barb Treadway declined to get off of the company's policy health plan and go on to Medicare. And did both of them deny that he offered to pay for a supplemental policy to embellish the Medicare? Marjorie did. Mr. Hallgren says that he made the offer to cover the difference, if there was any difference. Counsel, what's your argument with respect to Hazen Piper and the facts you just described? That there was a, that the facts clearly show that the defendant had supposed a correlation between age and a reduced health insurance premium cost. The facts clearly show that from what I just read in the first email. I was before Marjorie's termination. Then the Medicare meeting. They're asked to go on Medicare, that can only be age-based. Then that is followed up with after. And because of that, he later terminated her. Is that right? The termination was the bad act that you allege. That is correct. And that occurred how long after this conference that you recite? The termination happened about six months later. Now, I know that the defense argues that there's no temporal proximity. Well, we have some cases on temporal proximity, do we not? Yes. And what do they say? I put those in my brief. Honestly, I can't remember the exact case site right now. But I do remember that one of those cases talked about the fact that there can be an extension, if you will, or moving back of the temporal proximity where there is evidence that the defendant basically set up a paper trail. They start to take actions that ultimately lead to the wrongful act, the termination. And in this case, that's exactly what happened. It was only about three months after the Medicare meeting that all of a sudden Marjorie is written up for these alleged acts of misconduct. And there were no basis for these later allegations. Is that your argument? No, that's not my argument. I think that at least the last one that prompted the actual write-up, I think that could have been a reasonable inference by the employer. But the first incident that was written up, that was a situation that was known by the defendant three months before even the Medicare meeting. They knew about this alleged problem with terminating a different policy for a client and then having to have it reinstated. They knew about it. They worked it out. Mr. Hallgren testified. He knew all about it. He worked with another employee to talk to travelers to get the policy reinstated. They knew all about it. And yet they did nothing about it. There was no write-up. their motive for the termination? Well, I think basically what this really comes down to, Your Honor, is that it comes down to a question of fact. They are going to allege that it's just a riff. They're just trying to get rid of employees because they've had these marked losses. We allege, and we have evidence to support the fact, that their termination of Marjorie Tramp was based upon her age, a correlation between her age and reducing health care premium costs. We have that in writing from the defendants. The fact that there may be other reasons that the defendants allege doesn't preclude the fact that they wrongfully terminated Marjorie Tramp based upon the correlation with her age. Let me ask you this. You keep talking about allegations. This is on summary judgment. It's not on allegations. It's on facts. Yeah. And the defendant here put up a statement of facts that you did not object to. So all of their facts at this stage are accepted as true. So you may want to call them allegations, but they're facts right now on summary judgment. Now, you've added some, and I know you're critical of the district court because the district court didn't use your additional, I think there were about three additional facts that you added. And it's true in the body of the background section, but in Judge Smithgamp's analysis, she does discuss your facts. So taking the facts as we have them and as the district court had them, why, you know, the fact is, as they said, is they had a riff and they fired, laid off, or whatever you want to call it, four people. That's a fact. As, you know, it's not an allegation. So you have to show that that's a legitimate reason. What is pretextual about it? What facts do you have to show that that's pretextual? Okay. First, I would like to back up just a second in terms of whether those facts should be admitted or not. I think that if you go back. Did you object to any of those facts? Yes, I believe that I did. Well, my notes are maybe wrong, but I don't see that you ever objected to their statement of facts on their summary judgment motion. Did you? Yes, I do believe that I did. I think that if you go back and look at the response that I prepared in relation to each of those paragraphs, I think that you will see that there is language. Well, no, what the district court found was you never, under the rules of the district court, we all have to live by these, is you have to make it very specific to follow the rules. You have to go by line, by paragraph number, and you have to object and explain why. And I didn't see that you'd done that. In your brief, you may have objected to it or your response to it. But I didn't see you followed the court rules. Am I wrong? Respectfully, Your Honor, I disagree with that. I do think that if you read those paragraphs, there are certain things that I did not respond to because I didn't have a problem with them. They would be considered admitted. But if you look at some of the other paragraphs, the responses that I had, the language that I used may have not been, I specifically denied this. When you did that counsel, did you refer to affidavits or deposition portions that support them so that the court could go to those and not have to wade through a ton of other paper? Is that your argument? All of the additional facts that I added and any of the statements that I made in my statement of facts, in my reply, specifically have pinpoint sites. I referred to the record. I said this is where it can be found. I wasn't making anything up. I wasn't paraphrasing. Well, I understand. But you understand under the rule, you have to refer, to make it simple for the court to follow what you're doing, and I'm talking about the district court. You have to specifically identify the paragraph that you're challenging of the, in this case, the defendant's summary judgment statement of facts. And I think maybe with a couple exceptions, you did not do that. Let's assume, and I, again, I think that if you go back and look at the language that I used, it may not have been specifically this is denied. But the language that I used clearly calls into or questions the information that was provided in a specific paragraph, and I cited in my additional facts, I cited them specifically to the record. But even if we assume that I did not do that properly, we still have to consider the facts that were admitted by the defendant. The additional facts, there's nothing in the rule that says that the non-moving party is prevented from providing additional facts, the statement of facts that was not included by the moving party in the original statement of facts. That's what I did. I included additional facts, and those, two points about that. One is that those in large part, and particularly with respect to the emails from the defendant employer. Well, you understand the district court said, Plaintiff also submitted a number statement of additional material facts but did not respond to the defendant's statement of facts as required by 56-1B. Accordingly, all properly referenced material facts in defendant's statement are considered admitted unless controverted in the plaintiff's response. So you're saying, I'm not real clear what the district court means by that, but. Quite honestly, I didn't understand the district court's ruling in regard to Rule 51. With the exception of the fact that I didn't use a specific, I denied paragraph. Well, I assume what the district court means is that when it alleges that it's operating on the basis of a contemplated riff or that unless you put that in dispute. Their statement that they were exercising their rights as an employer to reduce their force is accepted as a fact. I think that our statement of facts clearly refutes that the defendant's position was based solely on a riff. The facts also, as admitted by the defendant, include these emails where he, Mr. Gerbaki, clearly refers and relates age to a reduction in premium costs, health insurance premium costs. It's in black and white. So if it's both, then do you meet the but-for test for purposes of age discrimination? I believe that we do. Certainly, to create a question of fact, to get past summary judgment. Because we have enough information that is admitted by the defense, even if you don't believe that I followed Rule 51 correctly. The information that was admitted by the defense with these emails, and they admit that these emails existed, that they sent them, that they happened. Between the Medicare meeting, the emails, and the fact, and this was in Judge Smithkamp's decision. The admission by the defendant, this was Mr. Halgren's testimony, that he had received a quote, a health insurance quote, from Coventry prior to these emails that I've talked about. He receives a quote from Coventry that is surprisingly low to him. And that's based upon the fact that Marjorie Tramp and her fellow employee, Barb Treadway, the two oldest people left in the company, were not included in the quote. So they know that there is, in fact, a correlation, at least in their minds, between the age of the employees that they have in the pool and a reduction in health insurance costs. Well, counsel, I know you're red lights on, but I'm troubled by the presumptions that you make from that exchange. Especially, and I understand that the issue of the Medicare with supplemental coverage. You say that that's an ageist act, and yet if the quality of the coverage was the same with Medicare and a supplemental, and the issue was the company surviving or being prosperous with the costs of their Medicare, this may have been a dispute, but not one particularly based upon age. It simply permitted these two people to go on Medicare and have a supplemental coverage like about 50 million other Americans have. And I can't, I'm troubled by why, was there ever any, is there any evidence at all as to why they said no? Were they getting less coverage from this proposal that was being made? It was maybe made in good faith and had nothing to do, bad at least, about their age. I would have two points in response to your question. The first point is, remember that the Medicare meeting comes after Mr. Holgren has received that first quote from Coventry that is decidedly low, but it's... Well, I've gone all through that. I'm familiar with that, but go ahead. But consider that in total with the rest of the evidence in the sense that he goes completely, he goes straight to those two people who are identified in that quote, the two oldest people. They were the only two that were old enough to take Medicare, weren't they? Right. So why wouldn't he go to those two people? Why didn't the defendant ask one of the other younger employees who maybe their husband or their partner had life insurance that they could go on in that regard? Why focus on the two oldest people? Well, how do you know that they haven't, is there any, well, go ahead. You're not answering my question, but go ahead. Your time is up, I guess. Yeah, your time's expired. I'll give you a minute and rebuttal, but only a minute. Thank you, sir. I appreciate that. Good morning, Ms. Doerr. Good morning. Good to see you. You may proceed. You can lower that, I think, if you want. Somewhere there, there's a- I can see. Thank you. May it please the court. We're here today on an appeal by a plaintiff in an employment discrimination case appealing the district court's decision on summary judgment that the plaintiff had not met her burden of proof that she had been discriminated on the basis of age or a perceived disability. I'll proceed first to whether or not the plaintiff met her initial prima facie claim of age discrimination. In fact, was her termination, her age, the but-for reason that she was terminated in February 2009? And the plaintiff's link to her termination and her age are the August of 2008 meeting she had with Mr. Halgren when he goes on, has a meeting, asking them to take Medicare coverage. That's six months before she's terminated. This court has held that as a matter of law, this six-month link is insufficient to make a causal connection in a prima facie case. He also refers back to even later, another eight months before she's terminated, the emails by Mr. Grabacchi regarding health care costs. I want the court to focus on that these conversations or issues with regard to health care costs and Ms. Tramp were made by Mr. Grabacchi and Mr. Halgren. However, they were not the individuals that made the decision to terminate Ms. Tramp. Her immediate supervisor, Mr. Grasso, made the decision to terminate her because the company was going through the rift and she was the weakest performer in that particular group. Surely he was simply their cat's paw, though, right? There is absolutely no evidence of that, Your Honor. And in fact, if you read Mr. Grasso's deposition, he states that I was given complete discretion as to who I could terminate. And I never had any conversations with either Mr. Halgren or Mr. Grabacchi that they were concerned with health care costs. Or there's no evidence linking Mr. Halgren's conversations with Ms. Tramp about taking Medicare to Mr. Grasso. There's no evidence as to that. There at least has to be a little bit to survive summary judgment. Is that your argument? That's my argument. And if the court looks at its decision in libel versus adventure land, when it's very similar, it's not identical factual situation. It's a very well-written opinion, too. I didn't dissent, did I? Without some causal connection between the decision maker and the owner's concerns over health care costs, the cat's paw theory simply does not apply. And in order to find a prima facie case, the plaintiff must establish a cat's paw theory, and they have presented no evidence of that. I think that comes from another very well-written case that involves Sprint Telephone Company. There's also the Eighth Circuit case of Dedman v. Staley, a 2000 case, that mentions cat's paw theory. So, based on these facts, I'd also like to point out that the RIF itself, there's no statistical evidence that her termination was based on age. When we look at the statistical evidence in the RIF, we have two individuals who were younger than 40 and two individuals who were over 40. And courts have held that there's no statistical evidence of pretext in that type of a situation. The evidence also establishes that three of the four individuals who took over Ms. Tramp's work in the personal lines were over the age of 40. I'd also point out that when the company went through its 2007 RIF, at a time when Ms. Tramp would have been 69 years old, she was not terminated at that point. You know, you're talking about the legitimacy. The district court also found that there was no prima facie case. And that, I think, is the plaintiff's strongest argument and your weakest argument. How do you defend the district court's opinion that there is no prima facie case? I've laid out that there's no evidence, no disputed fact, that age was the but-for factor in her termination. That's because of the decision-maker? One, because of the claims that the plaintiff has as to why they believe it to be the August of 2008 meeting with regard to Medicare coverage and then the email in June of 2008. There's simply too far of a time period as a matter of law to reach a causal connection. Your argument is that we must disregard the Medicare offer because that happened too long before the time that they were terminated. That's one argument, but I think as you brought up in your argument with the plaintiff's attorney, Your Honor, simply offering Medicare coverage, the law permits companies to take advantage of Medicare when their employees reach age 65. And it's not per se age discrimination to request that employees, or as part of their health care plan, that they then take on Medicare coverage. But without the supplemental coverage, this might be inferior coverage from the usual employer-employee coverage. Well, the plaintiff never had put forth any evidence that what she was asked to do was inferior to staying on the company's current policy. And she elected not to, and nothing happened. So is that a fact that was not disputed, or a statement of your facts that was not disputed that the company offered to provide a supplemental policy? Yes, Your Honor. It is within the undisputed facts. So the district court treated that as admitted? Yes, Your Honor. What is your understanding of the Rule 56.1 compliance here? You had prepared for the district court a statement of facts, and as the district court said, they didn't file a proper response. And my law court went through the district court's opinion and marked off all of the statements the district court said apparently derived from your statement of facts in the paragraph numbers. What do you understand the district court was saying? Well, I think, Your Honor, we have to say that this is basic civil procedure law, and what is the goal of summary judgment? The moving party comes forward with facts that it claims are undisputed, material facts that it claims are undisputed. And based on those undisputed facts, the moving party is entitled to judgment as a matter of law. It is then on the... If they prove the cause of action, if they establish the cause of action. And it is on the burden then under the procedure for summary judgment in the local rule is that if the plaintiff or the non-moving party, in this case the plaintiff, believed that any of the facts that the plaintiff, the defendant, set forth were disputed material facts, it had to cite to that paragraph and say, I dispute that the cause of the 2000 Marjory Tramps termination was based on the RIF, or that I claim and that it was the RIF was a pretext. That you have to specifically cite to each statement made by the moving party. That's the civil procedure rule. I understand the rule, but what about the district court neglect? Counsel, Mr. Weiss is saying that, and also briefed somewhat, that the district court didn't address some of his responses. I don't think that under the rule the district court was required to. The district court, the local rule says that the court is not, well, can deem those undisputed facts as admitted. It's not the burden of the moving party to come back and dispute whatever facts the non-moving party sets forth. That's an issue for the trial then to try. The problem in this case is that the non-moving party, the plaintiff, did not accurately dispute any of the facts laid forth by my client associated underwriters in the motion for summary judgment. And that would be viewed as an abuse of discretion standard. And again, if you look at libel versus adventure land, that same issue came up with regard to following the local rule, the very same local rule. The court found that it was not an abuse of discretion for the trial court to apply its local rule in deeming certain facts admitted. Well, here, for example, the district court says Kerbaki testified that he chose to include Plaintiff in the 2009 rape because of her hysterical poor job performance. That's a finding of fact by the district court. But was that challenged? To my knowledge, no, Your Honor, it was not. So under the rules, that's admitted. At least it's admitted he testified to that. Correct? Yes. Okay. It's my understanding from Mr. Wiese is that he set forth other information from the depositions and affidavits that told a different story without specifically addressing your statement. Is that correct? By not properly disputing the facts. Yeah, I understand. They're deemed admitted. Yeah. And the district court found that even with his additional facts that the associated underwriters was entitled to judgment as a matter of law. She took them into account, notwithstanding the fact of her ruling. I see. Yeah, in her analysis rather than in her statement of facts. Yes. That makes sense. I want to discuss the issue of the discrimination under the ADA. Ms. Tramp argues that she was terminated because of a perceived liability, perceived impairment or disability. And when we look at the new rules that were set forth in 2008 that apply in January 2009, the amendments being regarded as having an impairment does not include impairments or disabilities that are transitory or minor. The only evidence we have of her disability are when we look at the complaint, she makes allegations that she was going through arthroscopic knee surgery and taking vacation or sick leave to recover. Those are the allegations in the complaint. Through discovery, we learned that she had asked for three days off to recover from the surgery. There's no allegation that this impairment was anything other than short-lived or minor. There's no evidence really for a reasonable jury to conclude that she had anything other than a minor or transitory impairment. Therefore, it was not aired by the district court to find as a matter of law that she was not terminated because of a perceived disability. I would ask that this court affirm the findings of the district court in granting summary judgment to associated underwriters. Okay, thank you, Mr. Error. Mr. Weiss, you have one minute. Yes, sir. Okay, bullet points. As far as the cat's paw argument about Mr. Gerbaki actually being responsible for hiring and firing, I would point to the defendant's brief. That's what I have with me today. Paragraph 4 of the statement of facts in the defendant's brief says that from 2007 on, Mr. Gerbaki was in charge of hiring and firing of employees. With regard to the question of fact here, in the EEOC v. City of Independence, Missouri, I started talking about that, that this court talked about. The key is focusing on the employer's supposed correlation between age and the wrongful act. And I would just point out that we haven't talked much about it, but the subsequent email after Marjorie Tramp was terminated that Mr. Gerbaki sent to the insurance company again, we can actually substitute his word expecting with supposing from the case. We'd like to stay with you, but we were expecting, you could put in supposing, a rate decrease from the group becoming younger and healthier, not an increase. Again, these emails were admitted by the defendant. Okay, we understand that. Thank you for your argument. Your time has expired. Thank you. And we will take case under advisement. Thank you for your arguments. Thank you very much, sir. And we'll take about a ten minute recess.